**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Salvador Menjivar Giron,<br><br>                         Petitioner,<br><br>                -v-<br><br>Kenneth Genalo, *New York Field Office Director, Immigration and Customs Enforcement and Removal Operations (ICE/ERO)*, Todd Lyons, *Acting Director, US Immigration and Customs Enforcement*, Kristi Noem, *Secretary, Department of Homeland Security (DHS)*, and Pamela Bondi, *US Attorney General*,<br><br>                      Respondents. | 2:26-cv-01714<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On March 20, 2026, Salvador Menjivar Giron filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.) On March 23, 2026, this action was transferred from the Southern District of New York to the undersigned in the Eastern District of New York, where venue is proper. (ECF No. 7.)

The Petition argues that ICE's detention of Mr. Menjivar Giron without notice and opportunity to be heard since March 19, 2026 violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and that his detention is governed by 8 U.S.C. § 1226(a) ("Section 1226(a)"), not 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"). The Petition seeks the following relief: (1) a writ of habeas corpus requiring Respondents to immediately release Mr. Menjivar Giron, on conditions the Court deems just and proper, or in the alternative, an order

requiring Respondents to provide him with a bond hearing; (2) declaratory relief establishing that Mr. Menjivar Giron's detention is unlawful; (3) reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and (3) any further relief this Court deems just and proper. (Pet. at 10).[1] For the reasons explained below, the Petition is GRANTED in part.

Respondents are federal government officials named in their official capacities: (1) Kenneth Genalo, in his official capacity as the New York Field Office Director of Immigration and Customs Enforcement and Removal Operations (ICE/ERO); (2) Todd M. Lyons, in his official capacity as Acting Director of Immigration and Customs Enforcement; (3) Pam Bondi, in her official capacity as Attorney General, U.S. Department of Justice; and (4) Kristi Noem, in her official capacity as the outgoing Secretary of the Department of Homeland Security ("DHS").

Respondents "submit[] that the Court can decide this matter without further briefing or additional hearings." (Response to Order to Show Cause at 2, ECF No. 12.) They rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.).

---

[1] The Petition also seeks: (1) an order prohibiting Mr. Menjivar Giron's transfer from the Southern District of New York pending adjudication of the instant petition, and (2) an order requiring Respondents to show cause why the writ should not be granted within three days. (Pet. at 10.) The Petition was filed in the Southern District of New York upon the erroneous belief that Mr. Menjivar Giron was being detained there at the time of filing, when he was in fact being detained at the Nassau County Correctional Center, in the Eastern District of New York. (Pet. ¶ 10; ECF Nos. 5, 7.) Moreover, the Court has effectively granted such relief through the issuance of a March 23, 2026 Stay of Removal and Order to Show Cause, which required Respondents to provide their response to the Petition by March 26, 2026, at the latest, and prohibited Respondents from removing Mr. Menjivar Giron from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 10.)

(Response at 2 (citing Respondents' brief located at ECF No. 14 of *Rodriguez-Acurio*, No. 25-cv-6065).)[2]

Respondents argue that ICE's detention of Mr. Menjivar Giron falls under Section 1225(b)(2), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Response at 2–3.) According to Respondents, Section 1225(b)(2) requires Mr. Menjivar Giron's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

## DISCUSSION

### I. Petitioner is Detained Under 8 U.S.C § 1226(a)

Respondents are incorrect that Mr. Menjivar Giron is seeking admission and therefore subject to mandatory detention under Section 1225(b)(2) for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal voluntarily dismissed*, No. 26-219 (2d. Cir. Feb. 25,

---

[2] In response to the Petition, Respondents submitted a declaration from ICE Deportation Officer Spiro Vandoros (Declaration of Spiro Vandoros ("Vandoros Decl."), ECF No. 12-1) and several attached exhibits: (1) a September 1, 2021 Notice to Appear for an Immigration Court proceeding on November 9, 2021 (ECF No. 12-2); (2) a February 20, 2024 Immigration Court Order granting the parties' joint dismissal request (ECF No. 12-3); (3) a March 18, 2026 I-200 Warrant for Arrest of Alien (the "2026 Warrant") (ECF No. 12-4); (4) a March 19, 2026 Notice to Appear for an Immigration Court proceeding on March 31, 2026 (ECF No. 12-5); and (5) a March 20, 2026 Notice of In-Person Hearing in Immigration Court on March 25, 2026 (ECF No. 12-6).

2026). The Court's decision in *Rodriguez-Acurio* is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Menjivar Giron is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Menjivar Giron had been living in the interior of the United States for more than two decades, since around 2002, with his three U.S. citizen children as well as his three brothers and father, who are all lawful permanent residents of the United States. (Pet. ¶ 2.) He has applied for asylum. (*Id*. ¶ 21.)

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (Response at 2–3.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases

raising this issue are on appeal.[3] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[4] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.

Moreover, nothing in the record shows that ICE arrested and detained Mr. Menjivar Giron under Section 1225(b)(2) rather than Section 1226(a). (*See* 2026 Warrant, ECF No. 12-4 (reflecting that Mr. Menjivar Giron was served with an arrest warrant issued pursuant to

---

[3] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[4] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

"sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)). Respondents first invoked Section 1225(b)(2) as the basis for Mr. Menjivar Giron's detention in the course of this litigation. (Response at 2–3.) The Court declines to credit Officer Vandoros' conclusory statement that "Petitioner was arrested and detained pursuant to INA Section 235(b)(2)(A), 8 USC Section 1225(b)(2)(A) *pending the resolution of removal proceedings*," which is contradicted by the record. (Vandoros Decl. ¶¶ 13–14 (emphasis added).) It is undisputed that there were no pending removal proceedings against Mr. Menjivar Giron as of March 18, 2026—the date on which Officer Damiano issued the arrest warrant—or even by the time the arrest was carried out the following day. (*Id.* ¶¶ 11, 16.) The Notice to Appear for removal proceedings was issued and served on Mr. Menjivar Giron at an ICE processing center in East Meadow, New York only *after* Officer Vandaros and another unnamed U.S. Customs and Border Protection officer arrested Mr. Menjivar Giron in Mineola, New York on March 19, 2026. (*Id.* ¶ 12; 2026 Warrant, ECF No. 12-4.)

The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No.

25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Accordingly, ICE's detention of Mr. Menjivar Giron is governed by the discretionary detention framework set forth in Section 1226(a)—not Section 1225(b)(2).

## II.     Respondents Violated Petitioner's Right to Procedural Due Process

For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Menjivar Giron has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. (Response at 2–3; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[5]) ICE's detention of Mr. Menjivar Giron without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest

---

[5] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Menjivar Giron since March 19, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Menjivar Giron without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Menjivar Giron because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on March 19, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Menjivar Giron without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Menjivar Giron presents a flight risk or danger to the community. To the contrary, Mr. Menjivar Giron appeared for his Immigration Court proceedings in 2022 and 2024 and his appointment with the Nassau County Department of Probation on March 18, 2026. (Vandoros Decl. ¶¶ 7–8, 10.)

Additionally, Officer Vandoros unequivocally attests that "flight risk and danger to the public assessments were not made" prior to ICE's arrest and detention of Mr. Menjivar Giron on March 19, 2026. (*Id*. ¶ 14.) The ICE officers who arrested and detained Mr. Menjivar Giron did

not determine that he presented any risk of flight or safety risks before carrying out the arrest.[6] Thus, Respondents' detention of Mr. Menjivar Giron was unlawful at its inception.

Weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Menjivar Giron's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—Respondents' detention of Mr. Menjivar Giron with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Menjivar Giron was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2).[7] *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres*, 2025 WL 3168759, at *5.

---

[6] According to his declaration, on March 18, 2026 (just one day before the ICE arrest), Officer Vandoros received notice of Mr. Menjivar Giron's March 19, 2026 probation appointment in Mineola, conducted a record check that confirmed Mr. Menjivar Giron's presence in the United States without authorization, and obtained an I-200 arrest warrant signed by Acting Supervisory Detention Deportation Officer Michael Damiano. (Vandoros Decl. ¶¶ 10–11.) As noted, Officer Vandoros attests that there was no determination that Mr. Menjivar Giron presented a risk to public safety or a flight risk before Office Vandoros and another officer arrested him on March 19, 2026. (*Id*. ¶ 14.) Accordingly, the fact that more than one year earlier, on March 7, 2025, Mr. Menjivar Giron had been arrested and charged with Aggravated Driving While Intoxicated was not considered in ICE's decision to arrest and detain him. (*Id*. ¶ 9.)

[7] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Menjivar Giron, that provision is plainly inapplicable to him. Mr. Menjivar Giron is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at *15. Accordingly, ICE's detention of Mr. Menjivar Giron since March 19, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

### III.    Remedy

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Menjivar Giron from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Menjivar Giron is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Menjivar Giron is not rendered meaningless.

Additionally, Mr. Menjivar Giron "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and

reporting requirements"). Prior to his unlawful detention, Mr. Menjivar Giron was not subject to any release conditions, including but not limited to electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Menjivar Giron without any release conditions, including but not limited to any electronic monitoring, such as GPS monitoring.

## CONCLUSION

Accordingly for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted in part. Respondents must coordinate with Petitioner's counsel and thereafter release Petitioner, without any conditions, including but not limited to the condition of electronic monitoring whether GPS monitoring or any other form, into the physical care of their counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than **9:00 p.m. this evening**. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to all identification cards, clothing, and money. Respondents shall confirm compliance with these directives, including by identifying the individual to whom Petitioner was released, in a filing on the docket by **11:59 p.m. this evening**.

Additionally, pending the issuance of any final removal order against Mr. Menjivar Giron, Respondents are enjoined from denying Mr. Menjivar Giron bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

11

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Mr. Menjivar Giron may file an application for attorneys' fees and costs incurred in pursuing this action by June 22, 2026.

The Show Cause hearing scheduled for March 27, 2026 at 1:00 PM in the Alfonse D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.

Dated:  Central Islip, New York
        March 24, 2026

        */s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

12